FILED: February 27, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-4193
(1:09-cr-00452-JFM-1)

UNITED STATES OF AMERICA

    Plaintiff - Appellant

v.

LENNY MANUEL ORTIZ

    Defendant - Appellee

JUDGMENT

In accordance with the decision of this court, the judgment of the district court is reversed. This case is remanded to the district court for further proceedings consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

LENNY MANUEL ORTIZ,
    *Defendant-Appellee.*

No. 11-4193

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Senior District Judge.
(1:09-cr-00452-JFM-1)

Argued: December 9, 2011

Decided: February 27, 2012

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Duncan joined.

Appeal: 11-4193   Case 1:09-cr-00452-JFM   Document: 38   Date Filed: 02/27/2012   Document 41   Filed 02/27/12   Page: 2 of 15   Page 3 of 18

2                UNITED STATES V. ORTIZ

### COUNSEL

**ARGUED:** Jonathan Biran, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Richard Winelander, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Christopher J. Romano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant.

### OPINION

NIEMEYER, Circuit Judge:

After Lenny Ortiz was indicted for two drug trafficking crimes—conspiracy to distribute five kilograms or more of cocaine and possession with intent to distribute five kilograms or more of cocaine—in violation of 21 U.S.C. § 841(a)(1), he filed a motion to suppress the cocaine discovered in and taken from a secret compartment in his vehicle, alleging that the search of the vehicle violated his Fourth Amendment rights. The district court granted the motion on the ground that the search exceeded the scope of Ortiz's consent.

Because we conclude that the district court applied the wrong legal standards for determining whether law enforcement officers had consent to search Ortiz's vehicle and, in any event, whether they had probable cause to search it, we reverse and remand for further proceedings.

I

On August 7, 2009, the Maryland State Police received a tip from the New Jersey State Police that a white Mitsubishi automobile, which was believed to be connected with large volumes of drugs and money in the New York/New Jersey

area, was heading southbound on I-95 and was approaching the Delaware Memorial Bridge. The New Jersey State Police described the vehicle, supplied its license plate number, and indicated that the vehicle was suspected of containing drugs and money, based on information given by an informant with whom the New Jersey State Police were working. The Maryland State Police circulated the information to its troopers and alerted them to look out for the vehicle.

Soon after receiving the dispatch, Trooper Richard Decker spotted the vehicle traveling southbound on I-95 in Baltimore County, Maryland, traveling 13 miles per hour over the speed limit. Trooper Decker pulled the vehicle over, which was occupied only by its driver, Lenny Ortiz, and notified the Maryland State Police that he had stopped the vehicle. Trooper Decker was instructed to drag out the traffic stop in order to enable a more experienced officer and a drug dog to arrive at the scene. He was also instructed not to tell Ortiz that he was being stopped for anything more than a routine traffic violation.

As Trooper Decker approached the vehicle, he detected a strong scent of air freshener coming from the vehicle, and as he began speaking with Ortiz, he saw several cans of freshener in the vehicle. This contributed to Decker's suspicion that drugs were indeed in the vehicle because he understood that air fresheners were often "used as a masking agent to cover up some types of illegal drugs."

Upon Decker's request, Ortiz produced a New York driver's license, the vehicle's New Jersey registration card, and an expired insurance card. As these records revealed that Ortiz was not the owner of the vehicle, Ortiz explained that he had borrowed it from the owner. When asked for further information, however, Ortiz stumbled over the owner's name, saying that he only knew her last name. At a later point, he also could not supply the owner's telephone number. Ortiz

| 4 | UNITED STATES v. ORTIZ |
|---|---|

appeared very nervous and was also unable to explain his destination.

Trooper Decker returned to his cruiser to check out Ortiz's license, warrant status, and criminal history, determining that Ortiz's driver's license was valid, that no warrants were outstanding against him, and that he had no criminal history. While Decker was writing a warning ticket, Trooper Jeremiah Gussoni arrived. On his way to the scene, Trooper Gussoni spoke directly with New Jersey State Police Trooper Larry Williams, who told Gussoni that the Mitsubishi had frequently been used to transport "contraband, drugs, and money" in the New Jersey and New York area; that the vehicle's course heading south on I-95 past the Delaware Memorial Bridge was "extremely unorthodox" for this vehicle; and that he suspected that "the vehicle would have drugs or large amounts of currency in it."

Upon Trooper Gussoni's request, Ortiz stepped out of the vehicle so that Gussoni could pat him down and speak with him further. During the conversation, Ortiz acknowledged that his license might be suspended in Virginia. When asked whether there were any drugs or money inside the vehicle, Ortiz said no. Trooper Gussoni then requested permission to search the vehicle for drugs, and Ortiz responded, "Yes," telling Gussoni that "he was in no rush, [they] could take [their] time, and [they] were free to search his vehicle." During this conversation, Trooper Gussoni observed that Ortiz was "scared to death." The officers did not, however, search the vehicle at that point because they had not yet completed the traffic stop. As they later explained at the suppression hearing, Maryland State Police policy requires the troopers to secure consent after completing the traffic stop and telling the suspect he is free to leave. Nonetheless, Decker and Gussoni determined that they would not let Ortiz leave before properly searching the vehicle, a determination that they did not share with Ortiz.

UNITED STATES v. ORTIZ                         5

Trooper Decker completed writing a warning ticket and handed it to Ortiz, along with Ortiz's other papers, telling him he was free to leave and shaking his hand. Decker then expressed his concern to Ortiz that the vehicle might be stolen and asked whether he could "look around" for signs of "tampering or theft." When Ortiz responded, "Sure, sure," Trooper Decker asked further, "Are you sure you don't mind?" Ortiz replied, "I'll stand right here and wait."

Troopers Decker and Gussoni then searched the vehicle while Ortiz stood a short distance away, speaking with a third officer from the Maryland Department of Transportation who had responded to the alert, and he never objected to any of the actions pursued by the troopers during the course of their search. The troopers later explained that in conducting their search they were looking for signs of tampering or theft such as a popped ignition, a shaved key, low-hanging wires, tools such as screwdrivers or bolts, broken windows, and damage to exterior locks. They were also looking for the concealed vehicle identification number ("VIN"), which is located in a different spot for each make, model, and year of vehicle, to compare it with the openly displayed VIN on the dash of the vehicle, because it was common for automobile thieves to alter or replace the openly displayed VIN. Two minutes into the search, Trooper Gussoni lifted up the back seat in his effort to locate the concealed VIN, and under the seat, he observed a hidden compartment. When the officers opened the compartment, they uncovered six kilograms of cocaine. Ortiz was then placed under arrest.

The time that elapsed between when Ortiz was first pulled over and when he was arrested was approximately 35 minutes.

After Ortiz was indicted for drug trafficking, he filed a motion to suppress the cocaine, arguing that the search of his vehicle violated his Fourth Amendment rights because: (1) whatever consent he gave was "tainted" by the unreasonable

Appeal: 11-4193　Case 1:09-cr-00452-JFM　Document: 38　Document 41　Date Filed: 02/27/2012　Filed 02/27/12　Page: 6 of 15　Page 7 of 18

6                    UNITED STATES v. ORTIZ

length of the traffic stop, and (2) the search exceeded the scope of the consent he gave and therefore violated the general rule that officers must acquire a warrant before conducting the search.

The district court concluded that the Maryland State troopers exceeded the scope of consent given to them by Ortiz and, for that reason, granted Ortiz's motion to suppress, entering its order on January 7, 2011. In reaching its decision, the court concluded: (1) that the length of the detention "was not unreasonable and therefore not violative of the Fourth Amendment"; (2) that the Maryland State Police had reasonable suspicion that drugs were in the vehicle, but not probable cause; (3) that Ortiz gave consent to search for drugs before the traffic stop was completed but that the troopers could not, under Maryland State Police policy, rely on that consent because it was given before completion of the traffic stop; (4) that Ortiz gave his consent a second time to search the vehicle, but this time "to make sure [the vehicle] was not stolen"; and (5) that because persons generally are not aware that a concealed VIN could be under the back seat of the vehicle, Ortiz did not authorize the troopers to lift up the back seat to search for the concealed VIN. Accordingly, the court concluded that in removing the back seat, Trooper Gussoni violated Ortiz's Fourth Amendment rights and that the subsequent seizure of the cocaine was therefore illegal.

The government filed this appeal from the district court's order.

II

To justify the Maryland State Police's search of Ortiz's vehicle and the seizure of the cocaine found there, the government contends (1) that Ortiz voluntarily gave his consent to search the vehicle for drugs, a consent that he never withdrew, and that nothing in the events following his consent justified an inference that this consent was withdrawn; (2) that Ortiz

also voluntarily consented to a search of his vehicle for evidence of tampering or theft, which reasonably included authorization to search for the concealed VIN to confirm that the displayed VIN was not altered and for other evidence outside the vehicle's main compartment; and (3) that the troopers in any event had probable cause to believe that the vehicle contained contraband and therefore could be searched.

Ortiz concedes that Trooper Decker had an adequate justification to pull him over for driving 13 miles per hour over the speed limit. He asserts, however, that the traffic stop became unconstitutional because Trooper Decker extended it longer than would have been necessary to complete the traffic stop. Ortiz argues that the officers unnecessarily prolonged and manipulated the traffic stop in order to search for drugs, and that this deceptive conduct nullified the legal effect of any consent that Ortiz gave to search the vehicle. Alternatively, he argues that the search as conducted went beyond the scope of his consent because the officers were searching for drugs rather than signs of auto theft or tampering. Finally, Ortiz argues summarily that the Maryland State Police did not have either *a reasonable suspicion* that criminal activity was afoot or *probable cause* to believe that contraband was in the vehicle.

The applicable legal principles are well established. The Fourth Amendment prohibits unreasonable searches and seizures and provides that "no warrant shall issue, but upon probable cause." U.S. Const. amend. IV. Although law enforcement officers may stop a vehicle that they observe is violating a traffic law—a stop that amounts to a seizure for purposes of the Fourth Amendment, *see Terry v. Ohio*, 392 U.S. 1, 16 (1968)—the officers may not detain the vehicle for longer than necessary to accomplish the purposes of the stop, *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005). Any detention longer than reasonably necessary to accomplish the purposes of the stop must be justified by at least a reasonable suspicion of other criminal activity. *See id.*; *United States v.*

Appeal: 11-4193     Case 1:09-cr-00452-JFM Document 38 Filed: 02/27/2012     Document 41     Filed 02/27/12     Page 8 of 15     Page 9 of 18

8                UNITED STATES v. ORTIZ

*Sokolow*, 490 U.S. 1, 9 (1989); *United States v. Mason*, 628 F.3d 123, 128 (4th Cir. 2010); *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). A reasonable suspicion is demonstrated when an officer is able to "point to 'specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) (quoting *Terry*, 392 U.S. at 27) (internal citations omitted). When an officer has reasonable suspicion of criminal activity, he may detain the suspect so as "to permit the officer to allay the suspicion." *Mason*, 628 F.3d at 128.

Of course, if the officer has probable cause to believe that a search of the vehicle would uncover contraband, he may search the vehicle, *see United States v. Ross*, 456 U.S. 798, 799-800 (1982); *Carroll v. United States*, 267 U.S. 132, 147-49 (1925), and if he has probable cause to believe that the suspect has committed a crime, he may arrest him, *Herring v. United States*, 555 U.S. 135, 136 (2009). Probable cause is a flexible standard that simply requires "a reasonable ground for belief of guilt" and "more than bare suspicion." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). And a standard requiring only a "reasonable ground for belief of guilt" requires less of a showing than does the formal preponderance-of-the-evidence standard. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision," because probable cause is "only the probability, and not a prima facie showing, of criminal activity"); *see also United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) ("[T]he probable-cause standard does not require that the officer's belief be more likely true than false").

A suspect's consent to search provides an exception to the Fourth Amendment's warrant and probable cause requirements. *See Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991).

Once a defendant voluntarily gives consent, a search that falls within the scope of that consent is constitutionally permissible. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Moreover, any consent given is valid until it is withdrawn by the defendant. *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir. 1996) (en banc).

These principles govern the proper disposition of this case, and we begin with the question of whether the Maryland State Police had probable cause to search Ortiz's vehicle.

In the district court, the government argued that the Maryland State Police indeed had probable cause to believe that Ortiz's vehicle contained contraband. The government pointed to a communication from the New Jersey State Police, stating, "White Mitz. Montero NJ-YSY95E heading SB I-95 w/possible CDS n $$$." The communication also provided the telephone number of New Jersey State Trooper Larry Williams, with whom Maryland State Trooper Gussoni spoke after the Mitsubishi was discovered traveling southbound on I-95 in Baltimore County. Trooper Williams told Gussoni that the Mitsubishi "was being utilized to transport drugs and/or money," as discovered in connection with a narcotics investigation he was handling with the U.S. Drug Enforcement Agency. Williams advised that, based on information received from an informant, the vehicle was "usually transporting the drugs and/or money in northern New Jersey and southern New York." Williams indicated that he had arranged for a "silent alert," which would call on law enforcement officers to let Trooper Williams know if they spotted the vehicle so that he could continue to trace its movements. Finally Trooper Williams advised that he had received contact from another New Jersey State trooper who observed the Mitsubishi heading southbound on I-95 and approaching the Delaware Memorial Bridge. Trooper Williams indicated that this course of travel was "unusual based on Trooper Williams' investigation." The government argued that all of this information, coupled with the information developed by the Maryland

Appeal: 11-4193　Case 1:09-cr-00452-JFM　Document: 38　Document 41　Date Filed: 02/27/2012　Filed 02/27/12　Page: 10 of 15　Page 11 of 18

10　　UNITED STATES v. ORTIZ

State Police after they stopped Ortiz, provided them with probable cause to believe that contraband was in the vehicle. The Maryland State Police observed the overwhelming odor of air fresheners coming from Ortiz's vehicle and the presence of multiple air fresheners in the vehicle; Ortiz's uncertainty about the ownership of the vehicle; Ortiz's uncertainty and confusion about his destination; and his nervousness. Taken as a whole, the government maintained that this evidence constituted probable cause which would justify a search of the vehicle even had Ortiz not consented.

The district court found the facts as they were presented by the government and concluded that they "gave rise to reasonable suspicion" that criminal activity was afoot but could not "be said to constitute probable cause." The court explained:

> If one were to write on a clean slate . . . this combination of factors might be considered as justifying the search of a vehicle being driven on a public roadway, where the expectation of privacy may well be deemed to be less than the expectation of privacy to which one is entitled in a private home.
>
> Perhaps what is needed is the formulation of a new test for assessing the constitutionality of the search of a vehicle on a public roadway, something between "reasonable suspicion" and "probable cause." One does not need to look far to find the test that arguably should be applied. It is known to every lawyer and judge and is found in the "more likely than not" instruction concerning the *"preponderance of the evidence" standard* that is routinely given in most civil cases. *Application of that test here would render the search of the vehicle that the defendant was driving compliant with the Fourth Amendment because the Troopers were certainly in possession of information that made i[t] "more likely than not" that drugs were located within the vehicle.*

Appeal: 11-4193    Case 1:09-cr-00452-JFM    Document: 38-2    Date Filed: 02/27/2012    Document 41-2    Filed 02/27/12    Page: 11 of 15    Page 12 of 18

UNITED STATES v. ORTIZ                                              11

(Emphasis added). Thus, the district court assumed that the reasonable suspicion standard was a less demanding standard than the preponderance standard and that the preponderance standard was a less demanding standard than the probable cause standard. On that assumption, the court concluded that the Maryland State troopers had, by a preponderance of evidence, justified their belief that contraband was in the vehicle, but that the preponderance standard was insufficient to establish probable cause.

This ruling erroneously elevated the probable cause standard to one more demanding than a preponderance. Probable cause requires an officer to have a *"reasonable ground* for belief of guilt"—"more than bare suspicion." *Brinegar*, 338 U.S. at 175 (emphasis added). A "reasonable ground" for belief is less demanding than a standard requiring a preponderance of the evidence for the belief. *See Gates*, 462 U.S. at 235; *Humphries*, 372 F.3d at 660 ("[T]he probable-cause standard does not require that the officer's belief be more likely true than false"). Thus, when the district court concluded that a search of the vehicle would "more likely than not" have uncovered contraband, it reached a conclusion that satisfied the probable-cause standard and authorized the Maryland State Police to search Ortiz's vehicle.

While Ortiz summarily challenges any conclusion that the officers had probable cause to believe that contraband was in the vehicle, he fails to address the evidence or provide other support for his challenge. The district court, however, found as fact that the information available to the Maryland State Police at the time of the search made it "more likely than not that drugs were located within the vehicle," and we cannot conclude, on the evidence presented, that the finding was clearly erroneous.

From the evidence available to the troopers at the time of the traffic stop, a reasonable officer would have a "reasonable ground to believe" that drugs were in the vehicle. This stan-

| 12 | UNITED STATES v. ORTIZ |
|---|---|

dard is not particularly demanding, and the evidence need not provide the officers with an air-tight case, nor even a case satisfying the preponderance standard. Rather, the probable cause standard is recognized to be a flexible, common sense standard by which reasonable officers can conclude that what they see, in light of their experience, supports an objective belief that contraband is in the vehicle. The officers are, in forming their belief, "given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search and seizure will present a triable issue of probable cause." *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

Accordingly, we affirm the district court's finding insofar as the court found that the Maryland State troopers "were certainly in possession of information that made it 'more likely than not' that drugs were located in the vehicle," but we reverse its legal conclusion that such a finding was insufficient to give the troopers probable cause. We conclude that it did and therefore that the search of Ortiz's vehicle was justified by probable cause.

We also conclude, as an additional basis for our decision, that the officers' search was supported by Ortiz's voluntary consent, given twice, to search the vehicle—once when he gave permission to search the vehicle *for drugs* and again when he gave consent to search the vehicle to determine *whether it was stolen.*

During the course of the traffic stop, Ortiz granted Trooper Gussoni permission to search the vehicle for drugs, stating that "he was in no rush, [the troopers] could take [their] time, and [they] were free to search his vehicle." The district court discounted this consent because the officers, by their own admission, chose not to rely on it due to a Maryland State Police policy that instructs officers to formally terminate a traffic stop before conducting searches for items unrelated to the traffic violation. The court also suggested to counsel that

Appeal: 11-4193  Case 1:09-cr-00452-JFM  Document 41-2  Filed 02/27/12  Page 14 of 18
Case 1:09-cr-00452-JFM  Document 38  Filed 02/27/2012  Page 14 of 18

UNITED STATES v. ORTIZ                          13

this consent was "vitiated" by Trooper Decker's statement to Ortiz that he was free to leave.

The district court's reasoning, however, fails to recognize that once voluntary consent is given, it remains valid until it is withdrawn *by the defendant. See Lattimore*, 87 F.3d at 651. It is irrelevant that the officers, for their own reasons, chose to secure a second consent before searching Ortiz's vehicle, and it is also beside the point that Trooper Decker told Ortiz he was free to leave. The facts remain that Ortiz voluntarily relinquished his right to object to a drug search when he gave the consent to search for drugs; he never withdrew that consent; and the search that ultimately took place was conducted within the scope of that consent.

In response to the troopers' request made after they completed the traffic stop, Ortiz also gave the officers consent to search for signs of auto theft or tampering. With respect to this consent, the district court found that a reasonable person would have had "no reason to anticipate" that a search for signs of automobile theft would involve subjecting the "entire vehicle" to "an intrusive search." The court therefore concluded that the search, which included lifting up the rear seat to locate the concealed VIN, exceeded the scope of consent given by Ortiz.

The problem with this conclusion is that the court substituted its notions about how to search for signs of vehicle theft for the undisputed testimony of experienced law enforcement officers testifying as to how such a search ought to proceed. At the suppression hearing, the Maryland State troopers testified, without contradiction, that a thorough tampering or theft inspection would include a search for a popped ignition, a shaved key, low-hanging wires, tools to facilitate theft, such as screwdrivers or bolts, broken windows, damage to exterior locks, and the concealed VIN. Some of these items, such as low-hanging wires or a broken window, would have been within the plain view of the searching officer and therefore

Appeal: 11-4193   Case 1:09-cr-00452-JFM   Document 38-2   Date Filed: 02/27/2012   Document 41-2   Filed 02/27/12   Page 244 of 15   Page 15 of 18

14        UNITED STATES v. ORTIZ

would not have justified an intrusive search. But other items —such as tools to facilitate auto theft or a concealed VIN— could well have required inspections of "remote and barely accessible places[s]" that could not be inspected by simply glancing at the vehicle. *See United States v. Powers*, 439 F.2d 373, 374 (4th Cir. 1971) (officers had to "g[e]t beneath the car" to locate the confidential VIN).

In refusing to allow the officers to search the entire vehicle, including under the rear seat, the district court reasoned that Ortiz "had no reason to anticipate" that a search for signs of theft or tampering would extend so broadly. *See Jimeno*, 500 U.S. at 251 (the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect"). Ortiz, however, did not verbalize his expectations to the officers or restrict the scope of their search in any way. Moreover, he observed the troopers as they conducted the search and made no objection. The only limitation attached to the search was imposed by Trooper Decker when he said he would be searching for signs of theft or tampering.

We conclude that by giving consent to search for signs of theft or tampering, which was not limited by Ortiz or the officers to a search for a particular object, Ortiz effectively gave the officers consent to search for evidence of theft or tampering as a reasonable officer would find necessary in conducting such a search. *See United States v. Marshall*, 348 F.3d 281, 287 (1st Cir. 2003) (where scope of consent was limited to evidence of burglary, "[t]he standard for measuring the scope of a search is one of objective reasonableness, not the consenting party's subjective belief"); *see also United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) ("[T]he Fourth Amendment does not even require that the suspect *actually* consent to a government search; factual determinations by the government, such as the presence of consent, must be *reasonable*, but are not required always to be *correct*"). To be sure,

Appeal: 11-4193   Case 1:09-cr-00452-JFM   Document: 36   Document 41-2   Date Filed: 02/27/2012   Filed 02/27/12   Page: 15 of 15   Page 16 of 18

UNITED STATES v. ORTIZ                    15

the officers would have exceeded the scope of Ortiz's consent by conducting the search in a manner that bore no reasonable relationship to an effort to uncover signs of theft or tampering, but the officers testified, without dispute, that the scope of the search that they actually conducted was directly connected to looking for signs of theft.

In sum, we conclude that the Maryland State Police troopers had probable cause to believe that Ortiz's vehicle contained contraband and therefore were entitled to search it under the principles of *Carroll*, 267 U.S. at 149, and alternatively that the troopers had Ortiz's consent to search the vehicle and conducted their search within the scope of that consent. Accordingly, we reverse the district court's decision granting Ortiz's motion to suppress and remand this case for further proceedings.

*REVERSED AND REMANDED*

FILED: February 27, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-4193,   US v. Lenny Ortiz
1:09-cr-00452-JFM-1

NOTICE OF JUDGMENT

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons.
(www.supremecourtus.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers are sent to counsel appointed or assigned by the court in a separate transmission at the time judgment is entered. CJA 30 vouchers are sent to counsel in capital cases. CJA 20 vouchers are sent to counsel in criminal, post-judgment, habeas, and § 2255 cases. Assigned counsel vouchers are sent to counsel in civil, civil rights, and agency cases. Vouchers should be completed and returned within 60 days of the later of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari. If counsel appointed or assigned by the court did not receive a voucher, forms and instructions are available from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).